Marcelo Gondim, SBN 271302
Katherine Souza Pereira, SBN 355404
Gondim Law Corp.
1880 Century Park E, Suite 400
Los Angeles, CA 90067
Telephone: 323-282-7770
Email: court@gondim-law.com
Counsels for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

**GUSTAVO BORGES PEREIRA**
  Plaintiff,

vs.

**KRISTI NOEM, ET AL.**

  Defendants.

Case No.  3:26-cv-00890-JAH-MSB


**EX PARTE APPLICATION FOR EMERGENCY TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

Fed. R. Civ. P. 65(a) and 65(b)

To Defendants and to their attorney(s) of record:

COMES NOW the Plaintiff, Gustavo Borges Pereira (hereinafter "Mr. Borges Pereira" and/or "Plaintiff"), by and through his undersigned counsel, will

1

and hereby request an *Ex Parte* Application for Emergency Temporary Restraining Order and Order to Show Cause re Preliminary Injunction restraining Defendants, their agents, officers, employees, and all persons acting in concert with them from arresting, detaining, or removing Plaintiff in connection with his USCIS adjustment of status interview scheduled for February 19, 2026, at 10:15 a.m. at the USCIS Sa Diego Office(1325 Front Street, San Diego, CA 92101) pursuant to Rule 65(a) and 65 (b) of the Federal Rules of Civil Procedure.

Plaintiff seeks an order enjoining the Defendant, United States Citizenship and Immigration Services (USCIS), the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), and any agents, employees, or representatives thereof, from arresting, detaining, or initiating removal proceedings against Plaintiff at his scheduled I-485 interview, or at any other related USCIS proceeding, thereby allowing Plaintiff to attend his interview safely, maintain lawful presence, and protect themselves from irreparable harm while their action remains pending. In support thereof, Plaintiff states as follows:

1. Federal Rule of Civil Procedure 65 provides for the issuance of an emergency temporary restraining order under circumstances such as exists in the present case, to be effective up to fourteen (14) days.

2

2. In support of his Motion, Plaintiff submits the Affidavit of Marcelo Gondim, filed contemporaneously herewith, which sets forth the facts under penalty of perjury. Plaintiff further submits the Memorandum in Support of *Ex parte* application for emergency Temporary Restraining Order and Order to Show Cause re Preliminary Injunction, which addresses all necessary elements for the entry of such an order.

3. Plaintiff filed an I-130 Petition for Alien Relative on April 13, 2024, and concurrently filed an I-485 Application to Register Permanent Residence or Adjust Status. Plaintiff has a mandatory interview scheduled.

4. Plaintiff fears imminent arrest or detention by ICE at his USCIS interview based on his pending immigration status. Such enforcement would cause irreparable harm including: separation from family; exposure to detention and removal proceedings; financial and emotional distress to the family unit.

5. Plaintiff has endeavored to give notice to Defendants of the filing of his Motion, the accompanying Memorandum, and the Affidavit. Notice has been provided to Defendants through mail, as described in the Certification of Notice filed contemporaneously herewith.

WHEREFORE, for the foregoing reasons and for those set forth in the Plaintiffs' Memorandum of Law and Affidavit, Plaintiffs respectfully move that the Court enter an Emergency Temporary Restraining Order:

(A)    To enjoin Defendants, DHS, USCIS, and ICE from arresting, detaining, or initiating removal proceedings against Plaintiff at his scheduled I-485 interview, or at any related USCIS proceeding, to be effective up to fourteen (14) days;

(B) To set the matter for a hearing on Plaintiff's Motion for Preliminary Injunction at the Court's earliest convenience; and

(C) To grant any other relief the Court deems just and proper to prevent irreparable harm to Plaintiff;

Respectfully submitted,

Dated: February 17, 2026

_____
Marcelo Gondim (SBN 271302)
Gondim Law Corp.
1880 Century Park E, Suite 400
Phoenix, CA 90067
Phone: (323) 282-7770
Email: Court@gondim-law.com

Counsel for Plaintiff

4

Marcelo Gondim, SBN 271302
Katherine Souza Pereira, SBN 355404
Gondim Law Corp.
1880 Century Park E, Suite 400
Los Angeles, CA 90067
Telephone: 323-282-7770
Email: court@gondim-law.com
Counsels for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

**GUSTAVO BORGES PEREIRA**

Plaintiff,

vs.

**KRISTI NOEM, ET AL.**

Defendants.

Case No.  3:26-cv-00890-JAH-MSB

**MEMORANDUM OF POINTS AND AUTHORITIES**

Fed. R. Civ. P. 65(a) and 65(b)

5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff respectfully requests preliminary injunctive relief to prevent imminent irreparable harm. Specifically, Plaintiff's anticipated arrest at his USCIS adjustment interview due to a newly emerging enforcement practice in which Immigration and Customs Enforcement ("ICE") agents are detaining noncitizens at or shortly after USCIS interviews, including adjustment of status interviews. Ther practice is widely reported in both legal and mainstream media and has created a credible, imminent threat to Plaintiff's liberty and due process rights.

As set forth in the Complaint, Defendants have newly adopted and aggressively implemented an unlawful practice of arresting marriage-based I-485 applicants at their mandatory interviews, even when those applicants are fully eligible to adjust status under INA § 245(a) and 65 are in a period of authorized stay. Multiple arrests have occurred in California within the past weeks.

Recent arrests of adjustment of status applicants demonstrate the ICE is arresting individuals attending green card interviews at the USCIS filed offices, even and despite them qualifying for adjustment of status to lawful permanent

6

residents and having no criminal records, as reported extensively by news outlets throughout the country. [12]

Plaintiffs filed an I-130 Petition for Alien Relative and concurrently filed an I-485 Application to Register Permanent Residence or Adjust Status. his interview is imminent, on February 19, 2026, at 10:15 a.m. (Exhibit 1 – Interview Notice), and based on prior threats and enforcement policies, they reasonably fear that ICE may attempt to arrest or detain them during or immediately following the USCIS interview.

On January 30, 2026, USCIS scheduled Mr. Borges Pereira's mandatory adjustment interview for February 19, 2026, at 07:40 a.m., at 1325 Front Street, San Diego, CA 92101.

Absent immediate relief, Plaintiff faces irreparable harm, including loss of lawful presence, employment authorization, family separation, detention, removal proceedings, and financial and emotional hardship for his and his spouse.

Plaintiff seeks an order to enjoin Defendants from arresting, detaining, or initiating removal proceedings against them at USCIS, thereby allowing his to

---

[1] https://www.cbs8.com/article/news/local/more-san-diego-immigration-attorneys-report-client-detentions-at-uscis-interviews/509-8b89ba49-d7e6-4af2-b505-725958c08eb4/
[2] https://www.nbcsandiego.com/news/local/traumatizing-san-diego-mom-details-ice-arrest-baby-green-card-interview/3939898/

attend his interview safely, continue his life lawfully in the United States, and preserve his rights pending adjudication of Plaintiffs lawsuit.

## II.    LEGAL STANDARD

"Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders. Fed. R. Civ. P. 65. The standard for both forms of relief is the same. *Stuhlbarg Int'l Sales Co. v. Brush & Co*., 240 F.3d 832 (9th Cir. 2001).

A preliminary injunction is an "extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 172 L.Ed.2d 249, 555 U.S. 7, 77 USLW 4001 (2008). The Court may issue a preliminary injunction plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.

Where a case involves government action, courts also consider the public interest, "*Because 'the party opposing injunctive relief is a government entity' hise, the third and fourth factors 'merge*.'". *Nken v. Holder*, 129 S.Ct. 1749, 173 L.Ed.2d 550, 556 U.S. 418, 77 USLW 4310 (2009).

The Ninth Circuit weighs these factors on a sliding scale, such that where there are only "serious questions going to the merits", that is, less than a "likelihood

of success" on the merits—a preliminary injunction may still issue so long as "the balance of hardships tips sharply in the plaintiff's favor" and the other two factors are satisfied. *Shell Offshore, Inc. v. Greenpeace, Inc*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting Alliance for the Wild Rockies v. Cottrell , 632 F.3d 1127, 1135 (9th Cir. 2011) ); *Short v. Brown*, 893 F.3d 671 (9th Cir. 2018).

## III.    ARGUMENT

## A.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

Plaintiff has a strong likelihood of success on the merits because Defendants' potential arrest or detention of his at his upcoming I-485 interview is arbitrary, capricious, and contrary to law. Such enforcement actions would directly undermine the statutory framework Congress established to govern the adjustment of status process and would threaten Plaintiffs' fundamental rights under federal law and the Constitution.

### 1.    The Arrest-at-Interview Practice Is Arbitrary, Capricious, and Contrary to Law (APA)

Plaintiff is likely to succeed in his claim that Defendants' arrest-at-interview practice violates the Administrative Procedure Act because the practice is arbitrary, capricious, contrary to law, and an unexplained departure from longstanding agency conduct. Plaintiff is fully eligible for adjustment of status under INA § 245(a).

9

Plaintiff was inspected and admitted into the United States, has a properly filed and pending Form I-130 and I-485, and the governing regulations unequivocally provide that applicants for adjustment of status are in a period of authorized stay during the pendency of their applications. See 8 C.F.R. § 245.1(a) (recognizing authorized stay for adjustment applicants) and § 245.2(a)(1)(i) (permitting applicants to remain in the United States throughout adjudication). By definition, Plaintiffs fall squarely within the category of individuals Congress intended to protect under the statutory adjustment framework.

Despite the clear statutory and regulatory structure, Defendants have implemented a practice of arresting adjustment applicants at their mandatory USCIS interviews, transforming a required procedural step into an enforcement trap. (exhibit 3 – printouts of news articles) Ther enforcement practice directly contradicts the statutory design of § 245(a), which was enacted to allow certain eligible individuals to adjust status *from within the United States*, without the fear of removal for appearing at a required interview. Congress created the mechanism to promote family unity, enhance procedural fairness, and eliminate the need for eligible noncitizens to depart the United States to obtain lawful permanent residency. Defendants' conduct undermines the congressional purpose by turning an intended protection into a trigger for detention and removal.

The Defendants' new policy of arresting I-485 applicants at USCIS interviews constitutes a substantive rule because it fundamentally changes the adjustment-of-status process by introducing a new enforcement mechanism. Ther policy directly impacts the rights and obligations of I-485 applicants, placing an extraordinary and undue burden on individuals seeking adjustment of status.

The emergence of their policy, reinforced by reports from credible news outlets, reveals a concerning pattern wherein applicants are apprehended near interview locations without prior notice, creating significant fear and uncertainty within immigrant communities.[3] [4]

Defendants, including DHS and ICE, lack lawful authority to arrest or detain an applicant at a USCIS interview absent a specific enforcement action, such as a warrant or an order for removal. Enforcement at the site of a USCIS interview is particularly inappropriate where, as here, the applicant is pending lawful adjustment proceedings and has fully cooperated with the statutory process. See 8 U.S.C. § 1226(a) (authorizing arrest pursuant to lawful process); 8 C.F.R. § 245.2 (regarding adjustment of status eligibility). Any attempt to arrest Plaintiff at his juncture would

---

[3] https://www.kpbs.org/news/border-immigration/2025/11/25/ice-agents-arrest-green-card-applicants-in-san-diego/
[4] https://www.nbcsandiego.com/news/local/ice-legal-status-interview-at-san-diego-immigration/3931610/

constitute an improper exercise of authority and a direct interference with their statutory rights.

The Court agreed with this rationale in *Silva v. Noem* when it concluded that "if Plaintiff is not subject to removal, then he is also not subject to detention or arrest under § 1226(a). Plaintiff has therefore established a likelihood of success on the merits of his claim that arresting  him under § 1226(a) at his I-485 interview would violate the INA and the APA." *Silva v. Noem*, No. 2:25-cv-11867-AB-RAO, 2025 LX 508412 (C.D. Cal. Dec. 18, 2025).

Furthermore, Defendants' arrest-at-interview policy represents a sudden and unexplained departure from decades of consistent agency practice. For generations, USCIS and ICE have refrained from detaining individuals who were statutorily eligible for adjustment and who appeared at mandatory interviews. Absent any rulemaking, notice, justification, or explanation, Defendants have now reversed course—an action that itself violates the APA's requirement for reasoned decision-making. Agencies may not abruptly abandon well-established practices without explanation; doing so renders the action inherently arbitrary and capricious.

The current practice also weaponizes the mandatory USCIS interview. Plaintiff must appear for his interview to maintain eligibility; failure to appear results in denial of the I-485. Yet appearing exposes them to immediate arrest. This

creates a structurally absurd and self-defeating situation where complying with immigration law triggers the very enforcement consequence the statute was designed to prevent. Courts routinely reject agency actions that lead to such irrational, contradictory, or punitive outcomes, particularly when those outcomes nullify statutory rights.

Indeed, multiple federal courts have condemned similar ICE and USCIS conduct in the adjustment context. *In You v. Nielsen*, 321 F. Supp. 3d 451 (D. Mass. 2018), and *Lin v. Nielsen*, 377 F. Supp. 3d 556 (E.D. Pa. 2019), courts held that arresting and initiating removal proceedings against adjustment applicants during mandatory USCIS interviews was inconsistent with the statutory scheme, contrary to the intended functioning of INA § 245(a), and violated the APA. These decisions reflect the judiciary's consistent recognition that such practices are unlawful, unfair, and fundamentally incompatible with the adjustment-of-status framework.

For all these reasons, Defendants' arrest-at-interview practice is arbitrary, capricious, contrary to law, unsupported by reasoned explanation, inconsistent with agency regulations, and plainly violative of the APA. Plaintiffs are therefore overwhelmingly likely to succeed on the merits.

## 2. The Practice Violates the Accardi Doctrine

Defendants' arrest-at-interview practice independently violates the Accardi doctrine, which requires federal agencies to follow their own binding regulations and procedural rules. See *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Montes-Lopez v. Holder*, 694 F.3d 1085 (9th Cir. 2012). Under Accardi, when agency regulations confer procedural protections or establish a structured process upon which individuals reasonably rely, the agency's failure to adhere to those regulations renders its actions unlawful. Here, DHS and USCIS regulations expressly provide that applicants with properly filed adjustment applications are in a period of authorized stay and are permitted to remain in the United States while their applications are adjudicated. See 8 C.F.R. § 245.1(a); 8 C.F.R. § 245.2(a)(1)(i). These regulations embody the agency's acknowledgement that adjustment applicants are lawfully present for adjudicatory purposes and should not be treated as enforcement targets simply because they appear for a required interview.

ICE's practice of arresting applicants at their mandatory I-485 interviews is directly inconsistent with these binding regulatory protections. By detaining individuals who the regulations declare to be in a period of authorized stay and who are expressly permitted to remain in the country during adjudication, Defendants are disregarding their own governing rules. Such conduct is precisely what Accardi forbids. The agency cannot simultaneously classify Plaintiff as lawfully present for

14

purposes of the adjustment process while treating his as immediate enforcement targets when he complies with mandatory procedural requirements. This inconsistent and self-contradictory enforcement posture violates the Accardi doctrine and renders Defendants' actions unlawful.

### 3.    The Practice Violates Plaintiffs' Due Process Rights

Defendants' arrest-at-interview policy also violates Plaintiff's rights under the Due Process Clause of the Fifth Amendment. Plaintiff possesses a constitutionally protected liberty interest in pursuing adjustment of status, a benefit expressly created by Congress and supported by clear statutory and regulatory rights. Once the government establishes a procedure that allows eligible noncitizens to seek lawful permanent resident status without leaving the United States, it may not arbitrarily obstruct access to that process or impose punitive consequences for attempting to utilize it.

Defendants' conduct creates a constitutionally impermissible catch-22. Plaintiff is legally required to attend his USCIS adjustment interviews; failure to appear results in automatic denial of the I-485 application. Yet attending these mandatory interviews now exposes Plaintiff to immediate arrest, detention, and placement into removal proceedings. Ther forces Plaintiff to choose between (1) abandoning a statutory right Congress guaranteed to them or (2) risking detention

15

at the hands of the very agency charged with adjudicating their benefits. Such a dilemma is fundamentally incompatible with due process principles.

Ther practice is also profoundly unfair. Plaintiff complied with every requirement of the adjustment process, filed all mandatory forms, paid required fees, and appeared at interviews exactly as the law demands. Punishing them for following the rules violates basic norms of fairness embedded in due process jurisprudence. It chills the exercise of statutory rights, erodes trust in the immigration system, and deprives Plaintiff of the meaningful opportunity to have their applications adjudicated—all without any individualized assessment, notice, or procedural safeguards. For these reasons, Defendants' actions violate Plaintiffs' procedural and substantive due process rights.

### 4. Nonpublication Is The APA Problem: DHS Adopted a Substantive Arrest-at-Interview Policy Without Notice and Comment

DHS/ICE altered a settled, nationwide practice by instituting arrests of I-485 applicants at mandatory USCIS interviews (see Exhibit 2 – affidavits from Immigration Law practitioners)—without publishing the rule or subjecting it to notice-and-comment. That nonpublication is the defect the APA was designed to prevent.

Secret criteria and unpublished rules cannot be used to govern the public. In *Morton v. Ruiz*, the Supreme Court rejected the Bureau of Indian Affairs' reliance on an unpublished Manual limitation to deny benefits, explaining that agencies must "follow their own procedures" and cannot enforce criteria that "had not been published in the Federal Register or in the Code of Federal Regulations." 415 U.S. 199, 236–37 (1974). The Court emphasized that nonpublished restrictions "must fall," because Congress expects policies that affect rights to be public and procedurally regular.

Substantive policy changes must undergo notice-and-comment and are vacated when agencies skip it. In *Azar v. Allina Health Services*, the Supreme Court vacated HHS's changed payment policy because the agency "neglect[ed] its statutory notice-and-comment obligations," holding that where a policy "establishes or changes a substantive legal standard," notice and comment is required. 139 S. Ct. 1804, 1811–14 (2019).

Ninth Circuit recognizes the interpretive/legislative divide, but does not permit agencies to amend binding practice through covert operational shifts. See *Erringer v. Thompson*, 371 F.3d 625, 633–36 (9th Cir. 2004) (discussing when Medicare criteria are interpretive versus substantive; confirming that substantive changes require APA procedures).

17

*Perez v. Mortgage Bankers* clarifies that agencies may revise interpretive rules without notice-and-comment—but not to change a substantive standard or evade APA guardrails; courts retain authority to set aside arbitrary, capricious, or unlawful agency action. 575 U.S. 92, 101–03 (2015); see also *Harvard L. Rev.* commentary noting courts should police agency misconduct via § 706 review.

The APA requires federal agencies to follow notice-and-comment procedures before implementing substantive rules that impose binding rights or obligations 5 USCS § 553, *California v. Azar*, 911 F.3d 558 (9th Cir. 2018). Defendants practice of arresting adjustment applicants at USCIS interviews constitutes a substantive policy change with significant legal consequences. By failing to publish this policy, Defendants have deprived Plaintiffs of notice and an opportunity to challenge it, violating the APA *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 135 S. Ct. 1199 (2015), *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006 (9th Cir. 1987). This omission also infringes upon due process protections under the Fifth Amendment, which guarantee that no person shall be deprived of liberty without proper procedural safeguards USCS Const. Amend. 14. Defendants failure to provide notice or an opportunity to be heard denies Plaintiffs the procedural protections necessary to challenge or prepare for the agency's actions.

Here, DHS's arrest-at-interview practice creates immediate legal consequences (detention, initiation of removal, foreclosing completion of adjudication) and reverses decades of settled practice protecting adjustment applicants in a period of authorized stay. It is, at minimum, a substantive policy change requiring APA rulemaking; DHS's failure to publish it renders the practice unlawful and warrants vacatur or injunctive relief now. (Order at 2–3 (faulting absence of "actual policies"); Compl. ¶¶ 130–132 (alleging DHS skipped APA procedures).)

### a. DHS Cannot Be Rewarded for Violating The APA By Using Its Own Nonpublication to Evade Judicial Review

Agencies may not transform nonpublication into an evidentiary shield. The Supreme Court repeatedly rejects attempts to "evade" review by implementing policies outside APA channels and then pointing to the lack of a formal issuance.

*Morton v. Ruiz*: The Supreme Court refused to credit an unpublished manual restriction and held Congress did not ratify such secret policies; agencies must publicly articulate standards that affect benefits and expectations. 415 U.S. at 236–37.

*Allina*: When an agency changes a substantive standard without notice and comment, courts vacate the policy; the government is not allowed to benefit from its failure to follow procedural steps. 139 S. Ct. at 1811–14.

19

APA § 706(2)(A) authorizes courts to set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." The Ninth Circuit applies this guardrail to policy shifts inconsistent with legislative intent or settled practice. See *Erringer*, 371 F.3d at 633–36.

Defendants omission of a published policy cannot shield them from judicial review. Courts have emphasized that agencies cannot evade APA requirements by failing to formalize their policies or practices *California v. Azar*, 911 F.3d 558 (9th Cir. 2018). Allowing Defendants to avoid judicial scrutiny by neglecting to publish a policy would incentivize agencies to circumvent the APAs procedural safeguards, undermining the rule of law and public trust in administrative processes.

Application here: The Court's order states Plaintiffs did not identify an "actual policy." But that absence is the very consequence of DHS's APA violation and cannot bar relief. The correct remedy is a TRO preserving the status quo and preventing DHS from profiting from its nonpublication while this Court adjudicates the merits

## B. PLAINTIFF WILL SUFFER IRREPARABLE HARM

Absent immediate injunctive relief, Plaintiff faces imminent and irreparable harm. Plaintiff Mr. Borges Pereira will suffer severe and irreparable harm if arrested at his February 19, 2026, interview. Mr. Borges Pereira is married to a U.S. citizen,

has a properly filed I-130 and I-485, and is fully eligible for adjustment under INA § 245(a). If detained, he would be immediately separated from his U.S.-citizen spouse, disrupting their marriage and inflicting emotional and psychological harm that cannot be remedied after the fact. he would be transported to a Detention Center, where conditions are notoriously harsh, and he would lose the ability to participate in the adjudication of his own application. Because detention would result in the effective abandonment of his adjustment application, he would also lose his statutory right to seek lawful permanent resident status, a harm courts consistently deem irreparable. Additionally, detention would jeopardize his ability to maintain financial stability, employment authorization, and continuity of lawful process. These consequences cannot be undone and would permanently alter the trajectory of his life in the United States. Only a TRO can prevent these imminent harms.

These harms are ongoing, immediate, and cannot be remedied by monetary damages or any later judicial relief. The loss of lawful status, work authorization, family unity, and household stability constitutes irreparable harm that courts have repeatedly recognized as sufficient to justify preliminary injunctive relief. See *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974); *Leiva-Perez v. Holder*, 640 F.3d 962, 969 (9th Cir. 2011).

Courts have consistently recognized that the loss of employment authorization and the resulting inability to work and support one's family constitutes irreparable harm that cannot be adequately remedied through monetary damages alone. *See Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974) (acknowledging that "the loss of income and benefits … may constitute irreparable injury" in exceptional circumstances where the deprivation threatens subsistence); *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (holding that denial of driver's licenses and work authorization inflicts irreparable harm on DACA Recipients "in their everyday lives, including their ability to work, drive, and support their families"); *Leiva-Perez v. Holder*, 640 F.3d 962, 969 (9th Cir. 2011) (recognizing that deportation and loss of lawful ability to remain and work cause substantial and irreparable injury beyond economic detriment); *Gonzalez v. United States Dep't of Homeland Sec.,* 500 F. Supp. 3d 1115 (E.D. Cal. 2020) (finding irreparable harm where revocation of work authorization and benefits prevented individuals from maintaining income and health insurance).

In addition, Plaintiff is at imminent risk of detention, removal, and long-term bars to reentry under the Immigration and Nationality Act.

Recently in *Silva v. Noem*, the Court reasoned that since Plaintiff was not subject to removal due to his pending adjustment application as an immediate

22

relative of a U.S. citizen, he could not logically be subject to arrest under § 1226(a), which only authorizes detention 'pending a decision on whether the alien is to be removed.' The Court found the government's position inconsistent—acknowledging Plaintiff was not removable while refusing to confirm he wouldn't be arrested— which reinforced the likelihood of unlawful detention constituting irreparable harm *Silva v. Noem*, No. 2:25-cv-11867-AB-RAO, 2025 LX 508412 (C.D. Cal. Dec. 18, 2025)

These harms are not speculative; they are imminent and compounding daily. Each passing day without injunctive relief deepens the family's suffering and renders any ultimate favorable judgment less meaningful. Even if Plaintiff prevails on the merits, no future decision can retroactively restore lost income, health coverage, or erase accrued unlawful presence.

Given the imminent risk of unlawful arrest, forced family separation, loss of work and stability, and deprivation of lawful status, Plaintiff's need for a temporary restraining order is urgent and compelling. Immediate relief is necessary to prevent irreparable injury while Plaintiffs matter is adjudicated.

## C. THE BALANCE OF HARDSHIPS TIPS IN PLAINTIFF'S FAVOR AND THE INJUNCTION IS IN THE PUBLIC INTEREST

The balance of hardships in his case clearly tips in favor of Plaintiff. If Defendants are restrained from arresting Plaintiff at his USCIS I-485 interview, the government would experience little to no burden. Refraining from enforcement at a scheduled immigration interview imposes a minimal administrative inconvenience compared to the severe and irreparable harm Plaintiff and his family would otherwise endure.

In contrast, if Defendants are permitted to arrest Plaintiff during the interview, he faces immediate deprivation of liberty, loss of employment authorization, disruption of lawful status, and separation from their spouse, all of which would irreversibly destabilize their family. The consequences to Plaintiff and his family would be severe and enduring, and monetary remedies or later judicial relief cannot compensate for the emotional, financial, and legal harm caused by such enforcement action.

Courts have consistently held that when the hardship to the applicant far outweighs any burden on the government, injunctive relief is warranted. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) ("There is always a public interest in preventing aliens from being wrongfully removed, particularly to countries where they may face irreparable harm."); *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011)

24

("The balance of hardships will generally tip in the alien's favor when removal is imminent.").

Protecting families from unnecessary separation and ensuring that individuals can pursue immigration benefits without fear of imminent arrest at USCIS interviews is a significant public concern. Enjoining ICE from taking enforcement action at the interview preserves the integrity and fairness of the statutory adjustment of status process, promotes stability for families, and ensures that due process rights are respected. The public has a strong interest in safeguarding the procedural protections afforded to applicants under the Immigration and Nationality Act and the Constitution.

Moreover, the injunction would serve broader societal interests by supporting family unity and preventing avoidable hardship to Plaintiff and his spouse. The relief requested aligns with judicial precedent recognizing that ICE enforcement actions at USCIS interviews can be restrained when they threaten constitutional and statutory rights. See *Nken v. Holder*, 556 U.S. 418, 435 (2009) (emphasizing that there is a public interest in preventing wrongful removal of noncitizens, particularly where family integrity is at stake); *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (finding that preventing loss of work authorization and disruption to family life serves a strong public interest).

**1.     If Defendants Do Not Intend To Arrest at the Interviews, A TRO Harms No One; If They Do, The Harm Is Irreparable and Cannot Be Undone**

The balance of equities and public interest favor a TRO that simply prevents arrests in connection with these interviews.

Under *Winter*, courts weigh equities and public interest alongside likelihood and irreparable harm; injunctive relief preserves the status quo where government harm is minimal and individual harm is grave. 555 U.S. at 20–26.

*Nken* explains that when the government is the opposing party, the third and fourth factors merge—courts consider whether a stay/TRO will substantially injure the government and where the public interest lies; importantly, the standard does not require certainty, only a probable irreparable injury and a strong or substantial merits case with equities. 556 U.S. at 435–36; *Leiva-Perez*, 640 F.3d at 968–70.

The Ninth Circuit approves narrow, tailored injunctions that avoid undue intrusion but prevent irreparable harm. See *Melendres*, 695 F.3d at 1002–05 (no abuse of discretion where limited injunction addressed unconstitutional detentions).

The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a full hearing can be conducted USCS Fed Rules Civ Proc R 65, his*nandez v. Or. Legislature*, 521 F. Supp. 3d 1025 (D. Or. 2021). Granting the

TRO would allow Plaintiff to attend his USCIS interviews without fear of detention, ensuring compliance with the APA and due process. If Defendants do not intend to arrest Plaintiffs, the TRO would impose no harm. However, if Plaintiff is arrested, the harm would be irreparable, as it would involve the deprivation of his liberty and potential violations of their constitutional rights *Winter v. NRDC*, Inc., 555 U.S. 7, 129 S. Ct. 365 (2008).

Application here: If DHS does not intend arrests, the TRO is costless—it permits interviews to proceed without enforcement actions; adjudications continue, and the government can litigate the merits. If DHS does arrest Plaintiff without a TRO, the harm is immediate, one-way, and irreparable (detention, removal proceedings, family separation, loss of authorized-stay protections), and no later remedy restores the pre-arrest status quo.

Finally, enjoining Defendants from arresting Plaintiff at the interview ensures that they can continue to participate in the lawful immigration process without fear of arbitrary detention. It promotes fairness, prevents unnecessary hardship, and upholds public confidence in the immigration system. Maintaining Plaintiff's ability to attend their USCIS interview safely and lawfully strikes an appropriate balance between governmental interests and the urgent needs of Plaintiff.

27

Accordingly, both the balance of hardships and the public interest strongly favor the issuance of the requested temporary restraining order.

The Court in *Silva v. Noem* has concluded that "("Faced with [] a conflict between [administrative] financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in plaintiff's favor.")(citation omitted) *Silva v. Noem*, No. 2:25-cv-11867-AB-RAO, 2025 LX 508412 (C.D. Cal. Dec. 18, 2025).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court issue a Temporary Restraining Order and/or Preliminary Injunction to prevent ICE and DHS from arresting, detaining, or initiating removal proceedings against Plaintiff at his scheduled I-485 interview on February 19, 2026, and to preserve his lawful status and employment authorization while the matter is pending. Based and for the aforesaid, Plaintiff hereby asks the court to grant injunctive relief by:

a) Enjoining ICE and DHS from arresting, detaining, or initiating removal proceedings against Plaintiff at his scheduled I-485 interview, and any future adjustment-related interview;

b) Preserving Plaintiff's lawful status and employment authorization pending final adjudication of their action.

28

c) Ordering DHS and ICE not to issue a Notice to Appear, arrest, or detain Plaintiff while his action is pending; and, and

d) ordering USCIS to take any other measures the court finds necessary.

Respectfully submitted on February 17, 2026.

/s/ Marcelo Gondim

Marcelo Gondim (SBN 271302)
Gondim Law Corp.
1880 Century Park E, Suite 400
Phoenix, CA 90067
Phone: (323) 282-7770
Email: Court@gondim-law.com

Counsel for Plaintiff


/s/ Katherine Souza Pereira

Katherine Souza Pereira (SBN 355404)
Gondim Law Corp.
1880 Century Park East, Suite 400
Los Angeles, CA 90067
Telephone: 323-282-777
Email: court@gondim-law.com
*Counsel for Plaintiff*

29

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2026, I electronically filed the

foregoing EX PARTE APPLICATION FOR EMERGENCY TEMPORARY

RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE

PRELIMINARY INJUNCTION by using the CM/ECF system, in accordance

with U.S. District Court for the Central District of California's CM/ECF

Administrative Procedures and Local Rules. Notice of the filing will be sent out to

all parties by operation of the Court's electronic filing system.

Marcelo Gondim (SBN 271302)
Gondim Law Corp.
1880 Century Park E, Suite 400
Phoenix, CA 90067
Phone: (323) 282-7770
Email: Court@gondim-law.com

Counsel for Plaintiff

30